# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### DOTHAN DIVISION

| | | |
|---|---|---|
| **CYNTHIA RUSHING MURPHY,** | ) | |
| **Personal Representative of the Estate** | ) | |
| **of Jerry Lenson Murphy, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 1:16-CV-0143-SLB-DAB** |
| | ) | |
| **ROBERT C. PRECISE, D.M.D.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is presently pending before the court on plaintiff's Motion in Limine, (doc. 59),[1] and defendant's Motion in Limine and Memorandum of Law, (doc. 60). For the reasons set forth herein, the court **GRANTS IN PART** and **DENIES IN PART** the parties' Motions in Limine, (docs. 59 and 60).

## TABLE OF CONTENTS

I. MOTION IN LIMINE STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. EXPERT TESTIMONY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1. Failure to Disclose.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            a. Dr. Voss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            b.   Dr. Rothrock and Dr. Garcia – Opinions Regarding Medical Clearance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2. Expert Testimony Regarding the Standard of Care. . . . . . . . . . . . . . . . . . 12
        3. Use of Epinephrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

    4. Cause of Death.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    5. Opinion Testimony Concerning Medical Clearance. . . . . . . . . . . . . . . . 17
    6. Dr. Wendy Wright. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        a. Misrepresentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        b. Husband's Name. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    7. Dr. Rosenstiel.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        a. Divorces. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        b. Amount Paid to Teach Course. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    8. Amount of Money Any Expert Makes in Their Professional Practice
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    9. Expert as a Party in Other Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    10. Medical Literature. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    11. Conspiracy of Silence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    12. Defendant's Recommendation of Expert Witness. . . . . . . . . . . . . . . . 24
    13. Plaintiff's Experts Residing Outside Alabama.. . . . . . . . . . . . . . . . . . . 24
B. CHARACTER EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    1. Prior Negligence, Bad Acts, or Omissions by the Defendant. . . . . . . . . 25
    2. Evidence of or References to the Defendant's Good Character. . . . . . . . 27
    3. Admission to Dental School. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
C. CRIMINAL AND CIVIL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . 30
    1. Burden of Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    2. Mischaracterizing Defendant's Duty.. . . . . . . . . . . . . . . . . . . . . . . . . . . 32
D. FINANCIAL CONDITION OR EFFECT OF VERDICT. . . . . . . . . . . . . . 33
    1. Effect of the Verdict on Defendant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    3. Financial Status of Either Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    4. Cattle Farmers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    5. Malpractice Insurance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    6. Billing Practices and Financial Operation of Dixieland Dental. . . . . . . . 37
E. SUBSEQUENT REMEDIAL MEASURES. . . . . . . . . . . . . . . . . . . . . . . . . 37
    1. Lowered Blood Pressure Threshold. . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    2. Dixieland Dental's Failure to Develop Written Policies.. . . . . . . . . . . . . 38
F. MR. MURPHY'S MEDICAL RECORD. . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    1. Altering the Medical Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    2. "Incredibly Amazing". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
H. LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    1. Settlement Discussions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    2. "Malpractice Lawyers". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    3. "Jackpot". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
I. OBJECTIONS TO EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
J. DYING IN THE DENTAL CHAIR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## I. **MOTION IN LIMINE STANDARD**

In general, the term "in limine" "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A ruling on evidence in limine "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. [It] also may save the parties time, effort and cost in preparing and presenting their cases." *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521, *1 (M.D. Ala. Feb. 20, 2001)(internal citations and quotations omitted). Nevertheless, "it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. Thus, the motion in limine is an effective approach only if the evidence at issue is clearly inadmissible." *Id*. (citations omitted).

# II. DISCUSSION

## A. EXPERT TESTIMONY

### 1. Failure to Disclose

The parties each seek an Order excluding expert testimony based on the other party's failure to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2). (Doc. 59 ¶4; doc. 60 ¶ 30.) As amended in 2010, Rule 26(a)(2) states, in pertinent part:

> (2) *Disclosure of Expert Testimony.*
>
> > (A)   *In General.*   In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.[2]

---

[2]Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 703 provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case . . . . The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

---

if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. And, Rule 705 states, "Unless the court orders otherwise, an expert may state an opinion – and give the reasons for it – without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705.

> (ii) a summary of the facts and opinions to which the witness is
> expected to testify.

Fed. R. Civ. P. 26(a)(2)(A)-(C)(footnote added).  "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[3]  Fed. R. Civ. P. 37(c)(1).  "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Knight v. Miami-Dade Cty.*, 856 F.3d 795, 812 (11th Cir. 2017)(quoting *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997)).  A "harmless" violation

---

[3]"In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1).  The "other appropriate sanctions . . . listed in Rule 37(b)(2)(A)(i)-(vi)" are:

> (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)  striking pleadings in whole or in part;
>
> (iv)  staying further proceedings until the order is obeyed;
>
> (v)  dismissing the action or proceeding in whole or in part; [or]
>
> (vi)  rendering a default judgment against the disobedient party . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

"involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Burney v. Rheem Mfg.*, 196 F.R.D. 659, 692 (M.D. Ala. 2000)(quoting *Vance v. United States*, 182 F.3d 920, 1999 WL 455435, *5 (6th Cir. June 25, 1999)(Unpublished)). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009)(quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). "It is within a court's discretion to preclude a party from relying on an expert's report to overcome summary judgment and preclude said expert from testifying at trial when the party fails to comply with Rule 26(a)(2) or carry its burden under Rule 37(c)(1)." *Mitchell v. City of Mobile*, Civil Action No. 15-0360-CG-C, 2017 WL 1740364, *2 (S.D. Ala. May 3, 2017) (citing *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008)).

### a. Dr. Voss

Plaintiff asks the court to preclude "Any evidence from experts who were not identified as testifying experts and whose testimony was not disclosed in accordance with Fed. R. Civ. P. 26 and/or not designated by the time set forth in the Court's Scheduling Order as amended, specifically Dr. Nicholas F. Voss." (Doc. 59 ¶ 4.) In response, defendant contends:

> The Court should permit Dr. Nicholas Voss to testify regarding his care and treatment of the decedent, including his conclusions concerning the cause of Jerry Murphy's brain stem hemorrhage. Dr. Voss is a Dothan-based neurosurgeon who treated Mr. Murphy from March 5-8, 2014. Dr. Voss became Murphy's attending/treating physician within two hours of the events at issue in this litigation, and he directed and controlled Murphy's neurological care until Murphy's death on March 8, 2014. Dr. Voss is the physician-of-

record who executed Murphy's death certificate, including the written attribution of a medical cause of death.

In his expert witness disclosure (filed on December 16, 2016), Dr. Precise identified Dr. Voss as a non-retained witness from whom he may elicit expert testimony at trial. Specifically, Dr. Precise's expert disclosure provided as follows:

> **Nicholas F. Voss, M.D.**
> . . .
> Defendant may elicit expert opinion(s) from Dr. Nicholas Voss. Dr. Voss has not been specially retained or employed as an expert in this case but treated Jerry L. Murphy March 5-8, 2014. . . . It is expected that Dr. Voss will be qualified as a licensed medical doctor and that he will testify concerning his treatment of Jerry L. Murphy.
>
> It has long been the law in this circuit and others that a party need not provide a detailed report of the opinions of non-retained treating physicians regarding the cause of a plaintiff's injuries when the physician's opinions are based upon their own care and treatment. . . .

(Doc. 68 at 2-3 [internal citations omitted].)

Neither party has provided Dr. Voss's deposition testimony or otherwise informed the court of the details of his anticipated testimony regarding the cause of Mr. Murphy's brain hemorrhage. Nevertheless, the court finds that Dr. Voss's testimony regarding the ***cause*** of Mr. Murphy's ***hemorrhage*** will be expert opinion testimony as defined by Fed. R. Evid. 702. The record is clear that Dr. Voss was not present when Mr. Murphy suffered his hemorrhage; therefore, his testimony as to the cause of the hemorrhage is not based on his first-hand observations. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)("Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and

703. Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."). Moreover, defendant does not contend that the determination of the cause of the hemorrhage was necessarily part of Dr. Voss's treatment and care of Mr. Murphy. *See Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 712-13 (11th Cir. 2008)(holding a treating physician's "opinion regarding the cause of [plaintiff's] injuries was not needed to explain his decision making process, nor did it pertain to [plaintiff's] treatment;" therefore, "[t]estimony regarding his diagnosis of the injury itself . . . would be permissible as lay testimony without the *Daubert* analysis, but his statement about the cause of the injury was an hypothesis" and expert opinion testimony); *see also Trinidad v. Moore*, No. 2:15CV323-WHA, 2016 WL 5341777, at *4 (M.D. Ala. Sept. 23, 2016)("[W]hen a treating physician offers an opinion as to causation, unless that opinion was formed and given as part of treatment, that testimony is expert testimony by the treating physician and triggers the requirements of Rule 26(a)(2)(C)."). The court finds that Dr. Voss's testimony regarding the cause of Mr. Murphy's pontine hemorrhage is expert opinion testimony under Fed. R. Evid. 702.

Because Dr. Voss is not a retained expert and because his causation testimony is expert testimony, defendant was required to disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). As set forth above, defendant's disclosure regarding Dr. Voss

states, "Defendant may elicit expert opinion(s) from Dr. Nicholas Voss. Dr. Voss has not been specially retained or employed as an expert in this case but treated Jerry L. Murphy March 5-8, 2014. . . . It is expected that Dr. Voss will be qualified as a licensed medical doctor and that *he will testify concerning his treatment of Jerry L. Murphy*." (Doc. 68-3 at 2 [emphasis added].) This disclosure does not mention that Dr. Voss will present expert opinion testimony as to the cause of Mr. Murphy's pontine hemorrhage as required by Fed. R. Civ. P. 26(a)(2)(C).

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendant has not shown that the failure to disclose Dr. Voss's expert testimony regarding causation of the brain hemorrhage was substantially justified or harmless.

Therefore, plaintiff's Motion in Limine, seeking to prohibit Dr. Voss from testifying as to the cause of Mr. Murphy's pontine hemorrhage, (doc. 59 ¶ 4), is **GRANTED**. Dr. Voss is prohibited from offering any testimony regarding his opinion as to the cause of Mr. Murphy's pontine hemorrhage.

### b. Dr. Rothrock and Dr. Garcia – Opinions Regarding Medical Clearance

Defendant asks the court to prohibit John F. Rothrock, M.D., and Ruben R. Garcia. M.D., from testifying as to their "opinion[s] . . . concerning medical clearance" because these opinions were not "included in the Plaintiff's Rule 26 disclosures." (Doc. 60 ¶ 30.) Dr.

Rothrock's expert report does not include any opinion concerning medical clearance. (*See generally* doc. 21-3.) However, Dr. Garcia's expert report states that he intends to testify as follows regarding medical clearance:

Opinions

. . .

1. Because of Mr. Murphy's health status on March 5, 2014, in particular his multiple comorbidities, high risk of recurrent stroke, and pre-procedure blood pressure (reportedly 174/87) he was not physically suited to undergo a procedure involving multiple extractions by a dentist.

2. Because of Mr. Murphy's health status on March 5, 2014, in particular his multiple comorbidities, high risk of recurrent stroke, and pre-procedure blood pressure he was not physically suited to be administered *any* epinephrine.

. . .

Additional Testimony

. . .

3. That neither I nor my office was ever contacted by Mr. Murphy regarding medical clearance for any planned dental extraction procedure or stopping his Plavix prior to the procedure.

4. That neither I nor my office was ever contacted by Dr. Precise or anyone at Dixieland Dental regarding medical clearance for any planned dental extraction procedure on Mr. Murphy or stopping Plavix prior to the procedure. Had I been contacted by Dr. Precise or anyone at Dixieland Dental, I would have emphatically refused medical clearance and warned against Mr. Murphy being administered *any* epinephrine.

5. I am frequently contacted by dentists for pre-procedure medical clearance of my patients.

(Doc. 21-4 at 4-6.) The court finds that Dr. Garcia's testimony concerning medical clearance was properly disclosed in his expert report.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 30), is **GRANTED IN PART** and **DENIED IN PART**. The Motion in Limine based on failure to disclose is **GRANTED** as to Dr. Rothrock; his testimony concerning medical clearance is excluded. The Motion in Limine based on failure to disclose is **DENIED** as to Dr. Garcia.

### 2. Expert Testimony Regarding the Standard of Care

Defendant asks the court to preclude plaintiff from offering "[a]ny testimony concerning the standard of care or reasonableness of any action or inaction by Dr. Precise and/or his employees from any witness who is not a 'similarly situated health care provider' as defined by the Alabama Medical Liability Act [AMLA]."[4] (Doc. 60 ¶ 2 [citing Ala. Code § 6-5-548].) Defendant seeks to preclude Mr. Murphy's treating physician, Dr. Ruben Garcia, from "criticiz[ing] Dr. Precise's care and treatment of the decedent because he is not

---

[4]Plaintiff's Motion in Limine also asks the court to exclude standard of care testimony from experts that are not similarly situated to defendant:

> 2. Any testimony from Dr. Wendy L. Wright; Dr. Nicholas F. Voss; Dr. Marcelo Branco; Dr. Joseph Shalit; Dr. David Herf; Dr. Clyde Pence and any other non-similarly situated health care providers, as to the standard of care or the breach of the standard of care.
>
> . . .
>
> 3. Any and all testimony of any non-similarly situated expert witnesses in this case regarding the standard of care for a dentist.

(Doc. 59 ¶¶ 2-3.) Defendant agreed to plaintiff's Motion in Limine. (*Id.*)

similarly situated to Dr. Precise under Alabama Code § 6-5-548," including "any testimony concerning . . . what level a patient's blood pressure should be to undergo this procedure or whether Mr. Murphy was a candidate to undergo the procedure at issue in this case, as such testimony is improper standard of care testimony and must be excluded." (*Id*.)

Pursuant to Alabama Medical Liability Act –

(a)  In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

(b)  Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself or herself out as a specialist, a "similarly situated health care provider" is one who meets all of the following qualifications:

(1)  Is licensed by the appropriate regulatory board or agency of this or some other state.

(2)  Is trained and experienced in the same discipline or school of practice.

(3)  Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.

Ala. Code § 6-5-548(a)-(b).

The court agrees that Dr. Garcia is precluded from testifying as to the ***standard of care*** or breach of the ***standard of care*** applicable to a dentist because Dr. Garcia, a medical

doctor, is not similarly situated to defendant, a dentist. Dr. Garcia may testify as to his care and treatment of Mr. Murphy and, to the extent pre-clearance of Mr. Murphy becomes relevant, Dr. Garcia can testify as to whether he would have cleared Mr. Murphy for the procedure at issue, even if this testimony could be deemed, ultimately, to be "criticism" of defendant's actions or omissions.

Defendant's Motion in Limine, (doc. 60 ¶ 2), is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent it seeks to prohibit testimony regarding the standard of care and the breach of the standard of care offered by witnesses who are not similarly-situated health care providers. However, defendant's Motion is **DENIED** as to defendant's request to prohibit all testimony that could possibly or conceivably concern reasonableness and/or that, ultimately, criticizes defendant. This request is simply too broad.

Plaintiff's Motion in Limine, asking the court to prohibit "[a]ny and all testimony of any non-similarly situated expert witnesses in this case regarding the standard of care for a dentist," specifically "testimony from Dr. Wendy L. Wright; Dr. Nicholas F. Voss; Dr. Marcelo Branco; Dr. Joseph Shalit; Dr. David Herf; [and] Dr. Clyde Pence . . . as to the standard of care or the breach of the standard of care," (doc. 59 ¶¶ 2-3), and defendant's Motion in Limine, asking the court to prohibit testimony regarding the standard of care as it existed after March 5, 2014, (doc. 60 ¶ 27), are **GRANTED** without opposition.

**3. Use of Epinephrine**

Defendant asks the court to exclude "[a]ny statement that the use of epinephrine violated the standard of care or that is otherwise critical of Dr. Precise for using epinephrine." (Doc. 60 ¶ 9.) He argues, "This Court has previously held that the Plaintiff's medical experts are precluded from providing any opinions at trial that epinephrine caused the decedent's brain stem hemorrhage. (Doc. 34) Thus, any such evidence would be immaterial, irrelevant, likely to confuse or mislead the trier of fact, *see* Fed. R. Evid. 401-03, and would violate Section 6-5-551 of the Alabama Medical Liability Act."[5] (*Id*.)

---

[5]Section 6-5-551 of AMLA states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

Ala. Code 6-5-551.

The court notes that the prior Report and Recommendation and Order, (docs. 34 and 62), concerned only the opinions of Dr. Rothrock and Dr. Garcia that the use of epinephrine caused Mr. Murphy's death. However, the plaintiff's similarly-situated health care provider, Dr. Rodney Baier, stated in his expert report that he is "familiar with the potential health risks associated with the administration of epinephrine to a patient with Mr. Murphy's age, medical history (including stroke history and stroke risks), health status, and medications." (Doc. 72-1 at 52.) He opined:

> Because of Mr. Murphy's health status on March 5, 2014, in particular his multiple comorbidities, high risk of recurrent stroke, systolic blood pressure above 140 and non-emergency presentation, it was a breach of the standard of care for Dr. Precise to administer any epinephrine to Mr. Murphy. The standard of care required that Dr. Precise recognize the very high risk associated with administering epinephrine to his patient and that he not expose his patient to that risk.

(Doc. 72-1 at 56.) This testimony is relevant and its unfair prejudice, if any, does not outweigh its probative value. To the extent evidence is offered regarding the physiological effects of epinephrine, such evidence is admissible and helpful to jury.

Defendant's Motion in Limine, (doc. 60 ¶ 9), is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion in Limine is **DENIED** to the extent he seeks to exclude (1) evidence from Dr. Baier and (2) evidence from experts that are not similarly situated to defendant that may testify regarding the physiological effects of epinephrine assuming such evidence is relevant and material. The Motion in Limine is **GRANTED** as to opinion testimony from Dr. Rothrock and Dr. Garcia that the use of epinephrine caused Mr.

Murphy's pontine hemorrhage, and as to testimony from other experts that are not similarly-situated to defendant that use of epinephrine during Mr. Murphy's procedure was a breach of the applicable standard of care.

### 4. Cause of Death

Defendant asks the court to limit any questions or testimony regarding the cause of Mr. Murphy's death to licensed medical physicians. (Doc. 60 ¶ 28.) Plaintiff does not oppose this Motion.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 28), is **GRANTED**. Testimony regarding the cause of Mr. Murphy's death shall be provided by licensed medical physician witnesses.

### 5. Opinion Testimony Concerning Medical Clearance

Defendant asks the court to preclude Dr. Rothrock and Dr. Garcia from testifying concerning medical clearance because such testimony "constitutes improper standard of care testimony."[6] (Doc. 60 ¶ 30.) The Motion in Limine with regard to Dr. Rothrock's testimony is **MOOT**. That testimony is excluded on other grounds.[7] See, *supra*, p. 9.

---

[6]Plaintiff's similarly-situated health care provider has opined, "[A]t an absolute minimum, the standard of care required that Dr. Precise obtain a medical release or medical clearance from Mr. Murphy's primary physician before undertaking Mr. Murphy's treatment." (Doc. 72-1 at 56.)

[7]As set forth above, Dr. Rothrock's expert opinion regarding medical clearance was not properly disclosed. Therefore, his testimony regarding medical clearance has been excluded on that ground. See, *supra*, p. 9-10.

According to plaintiff, "On March 5, 2014, Dixieland Dental had a written policy for 'EXTRACTION AND SURGERY PATIENTS' which provided "*if you have a heart condition, allergies to certain drugs, or any other physical illness, a written statement from a medical doctor approving the surgery should be obtained.*"" (Doc. 72 at 16 [emphasis in original].) Whether Dr. Garcia, Mr. Murphy's treating physician, would have provided such a written statement or otherwise cleared Mr. Murphy for the extraction procedure is ***not*** testimony regarding whether the standard of care required defendant to seek medical clearance or whether defendant had a policy requiring such medical clearance for patients like Mr. Murphy. However, assuming evidence at trial supports a finding that medical clearance is at issue – either because it is required as part of the standard of care and/or failure to clear Mr. Murphy violated the standard of care, Dr. Garcia may testify that he was not asked to clear Mr. Murphy for the extraction and that he would not have cleared Mr. Murphy for the extraction.

Defendant's Motion in Limine as to Dr. Garcia's testimony concerning medical clearance, (doc. 60 ¶ 30), is **DENIED**.

### 6. Dr. Wendy Wright

#### a. Misrepresentation

Defendant asks the court to preclude "[a]ny reference to Dr. Wendy Wright misrepresenting anything on her CV or 'academic document.'" (Doc. 60 ¶ 20.) He argues that "[t]here is no evidence in support of any such statement or reference and any such

evidence would be completely irrelevant to the issues in this case and would visit undue prejudice on Dr. Precise." (*Id.*) In response, "Plaintiff's counsel concede that it would be improper to reference or comment on Dr. Wright's misrepresenting anything in her CV or academic documents during voir dire or opening statements. However, Plaintiff reserves the right to impeach Dr. Wright with regard to said evidence during cross examination." (Doc. 72 at 15.)

Neither party has suggested the nature of the alleged misrepresentation. However, evidence of a witness's untruthfulness and an expert's qualifications are always relevant. Plaintiff may cross-examine Dr. Wright regarding her qualifications and the accuracy of her representations of those qualifications. *See Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.")

Defendant's Motion in Limine, (doc. 60 ¶ 20), is **DENIED**.

### b. Husband's Name

Defendant asks the court to prohibit plaintiff from making any reference to the fact that Dr. Wright did not take her husband's name. (Doc. 60 ¶ 21.) Plaintiff does not oppose this Motion.

Defendant's Motion in Limine, (doc. 60 ¶ 21), is **GRANTED**. The parties are prohibited from making any reference to the fact that Dr. Wright did not take her husband's name.

### 7. Dr. Rosenstiel

#### a. Divorces

Defendant asks the court to prohibit "[a]ny reference to Dr. Guy Rosenstiel's divorces. (Doc. 60 ¶ 23.) Plaintiff does not oppose this Motion.

Defendant's Motion in Limine, (doc. 60 ¶ 23), is **GRANTED**. The parties are prohibited from making reference to Dr. Rosenstiel's divorces.

#### b. Amount Paid to Teach Course

Defendant seeks to exclude evidence of the fact that Dr. Rosenstiel is paid or the amount he is paid to teach a class about dental implants on the ground that such evidence is irrelevant. (Doc. 60 ¶ 25.) Plaintiff's counsel state that they will not ask Dr. Rosenstiel about how much he is paid, but that they do intend to inquire about defendant paying $25,000 to attend the Dr. Rosenstiel's course. (Doc. 72 at 15-16.)

"Although an expert witness would not necessarily succumb to business pressures, and most experts endeavor to remain faithful to the facts as viewed through the lens of their specialized knowledge, when formulating their opinion, a jury nonetheless is entitled to know of the potential influences that are brought to bear on the witness when [the jury is] called upon to assess credibility." *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto.*

*Ins. Co.*, No. 11-10658, 2011 WL 4507417, *5 (E.D. Mich. Sept. 29, 2011)(citing *Collins*, 621 F.2d at 784). The court finds that this evidence is relevant to showing bias or interest on the part of Dr. Rosenstiel.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 25), is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **DENIED** as to evidence that defendant took Dr. Rosenstiel's course and the amount he paid for the course. The Motion is **GRANTED**, without opposition, as to the amount Dr. Rosenstiel was paid to teach in general and to teach this course in particular.

### 8. Amount of Money Any Expert Makes in Their Professional Practice

Defendant argues that any reference to the amount of money earned by an expert in his or her professional practice is "irrelevant to any issue in this case." (Doc. 60 ¶ 24.) The court agrees generally. However, according to plaintiff, two of defendant's experts – Dr. Rosenstiel and Dr. Michael Koslin – testified during their depositions that, if requested to appear at trial, they would base their fee for attendance at trial on the amount of money that they would lose from their practice. (Doc. 72 at 15.)

Each retained expert is required to provide "a statement of the compensation to be paid for the study and testimony in the case," as part of his or her expert report. Fed. R. Civ. P. 26(a)(2)(B)(vi). The amount an expert witness earns for his or her work on the case is relevant to the issue of the expert's interest and/or bias. *See Reynolds v. Gen. Motors Corp.*, No. CIV.A. 2:04-CV-0106R, 2007 WL 2908564, at *2 (N.D. Ga. Sept. 28, 2007)(citing

*Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded on non-pertinent grounds by Fed. R. Evid. 103(a), as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). Therefore, to the extent the amount of money an expert earns in his/or her practice is the basis for the expert's compensation for appearing as a trial witness in the case, such evidence is admissible.

Defendant's Motion in Limine, (doc. 60 ¶ 24), is **GRANTED IN PART** and **DENIED IN PART**. Evidence of the amount earned by expert witnesses in their professional practices is excluded, unless the expert witnesses' compensation for study and testimony in this case is based on a percentage of the income earned and/or income lost due to providing expert study and testimony in this case.

### 9. Expert as a Party in Other Cases

Plaintiff asks the court to prohibit the parties from questioning whether "any expert may be, is, has or may have been a defendant in a medical negligence case." (Doc. 59 ¶ 7.) Defendant does not oppose this Motion. Defendant asks the court to prohibit "[a]ny reference to Dr. Michael Koslin's involvement as a plaintiff and/or a defendant in other lawsuits." (Doc. 60 ¶ 22.) Plaintiff does not oppose this Motion.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 7), and defendant's Motion in Limine, (doc. 60 ¶ 22), are **GRANTED**. The parties are prohibited from making any reference or questioning any expert about whether he or she "may be, is, has or may have

been a defendant in a medical negligence case" and from referencing Dr. Koslin's involvement as a party in other lawsuits.

### 10. Medical Literature

Defendant asks the court to prohibit –

Any reference to or mention of any item of medical literature (including any book or other publication) which has not been previously specifically identified on the exhibit list and which is not first shown, by qualified expert testimony, to be a reliable authority reflecting the standard of care applicable to the care and treatment rendered by Dr. Precise.

(Doc. 60 ¶ 5.) Plaintiff does not oppose this Motion.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 5), is **GRANTED**. The parties are prohibited from making any reference or mention of medical literature (including any book or other publication) that is not specifically identified on the parties' exhibit lists and is not first shown, by qualified expert testimony, to be a reliable authority reflecting the standard of care applicable to the care and treatment rendered by defendant.[9]

### 11. Conspiracy of Silence

Defendant asks the court to prohibit plaintiff from making "[a]ny reference to an alleged 'conspiracy of silence' concerning malpractice testimony that supposedly exists among medical professionals with respect to criticisms of care or testimony." (Doc. 60 ¶ 6.) Plaintiff does not oppose this Motion.

---

[9]The parties do not intend to offer the medical literature evidence.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 6), is **GRANTED**. The parties may not make reference to a "conspiracy of silence" concerning malpractice testimony that supposedly exists among medical professionals with respect to criticisms of care performed by other medical professionals.

### 12. Defendant's Recommendation of Expert Witness

Defendant asks the court to prohibit "[a]ny reference to any dentists or physicians that [defendant] recommended as potential expert witnesses." (Doc. 60 ¶ 26.) Plaintiff does not oppose this Motion.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 26), is **GRANTED**. The parties shall not make any reference to whether defendant recommended a dentist or physician as an expert witness in this case.

### 13. Plaintiff's Experts Residing Outside Alabama

Plaintiff asks the court to prohibit defendant from "suggest[ing] that Plaintiff's experts are different or unqualified just because they do not reside in Alabama." (Doc. 59 ¶ 9.) In response, defendant states that he does not oppose the Motion in Limine "as phrased," because he "does not intend to argue that any of Plaintiff's experts are 'different or unqualified' solely by virtue of the fact that 'they do not reside in Alabama.'" (Doc. 68 at 5.)

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 9), is **GRANTED**. Defendant is prohibited from suggesting that plaintiff's experts are unqualified or "different" solely because they reside outside Alabama.

## B. CHARACTER EVIDENCE

### 1. Prior Negligence, Bad Acts, or Omissions by the Defendant

Defendant asks the court to prohibit –

> Any reference to any other lawsuits or claims filed against Dr. Precise or Dixieland Dental, any claims or complaints against Dr. Precise or Dixieland Dental regarding any other patients, and/or any act or omission, adverse outcome, bad result, or dissatisfaction involving any other patient.

(Doc. 60 ¶ 7.) He also asks the court to prohibit "[a]ny reference whatsoever, to establish or imply that Dr. Precise or any of his employees or agents, acted negligently, wantonly or improperly, committed malpractice, or breached the applicable standard of care in any way, or at any time other than as specifically alleged in Plaintiff's Complaint, as amended, and supported by competent expert testimony." (Doc. 60 ¶ 1.) Plaintiff does not oppose this Motion.[10] However, plaintiff asks the court to prohibit defendant from offering evidence of the **absence** of any alleged acts or negligence. (Doc. 59 ¶ 11.) In response, defendant argues:

> Dr. Precise agrees that it would be improper to introduce evidence with respect to specific care that he has provided to any patient other than Jerry

---

[10]Plaintiff argues that she has sufficiently pled an AMLA claim and that her claim is supported by expert testimony of a similarly-situated healthcare provider. (*See* doc. 72 at 1-4.) Defendant's Motion in Limine, (doc. 60 ¶ 1), does not ask the court to prohibit this testimony.

Murphy. Any such evidence would be inadmissible under Section 6-5-551 of the Alabama Medical Liability Act. However, it is entirely relevant for Dr. Precise to testify that he has not had any other patient experience a brain stem hemorrhage following a dental procedure.

(Doc. 68 at 5.)

Under Alabama law, "The plaintiff shall include in the complaint filed in [an AMLA] action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." Ala. Code § 6-5-551. "Any party [in an action brought pursuant to the AMLA is] prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." *Id.* This provision applies to both plaintiffs and defendants. *Id.*; *see also Leiser v. Raymond R. Fletcher, M.D., P.C.*, 978 So. 2d 700, 710 (Ala. 2007)(Cobb, C.J., concurring in part and concurring in result)(citing *Ex parte Pfizer, Inc.*, 746 So. 2d 960, 966 (Ala. 1999)(Johnstone, J., dissenting)).

Obviously, evidence that defendant has never had a patient, other than Mr. Murphy, suffer a brain stem hemorrhage during a dental procedure requires admission of evidence of his acts and omissions related to the care of patients other than Mr. Murphy on occasions other than that alleged in plaintiff's Complaint. The court finds defendant's testimony that he has never had a patient experience a brain-stem hemorrhage is evidence of his treatment and care of patients other than Mr. Murphy. Such evidence is barred by Ala. Code § 6-5-551.

Plaintiff's Motion in Limine, (doc. 59 ¶ 11), and defendant's Motion in Limine, (doc. 60 ¶¶ 1, 7), are **GRANTED**. The parties are prohibited from referencing and/or offering evidence of defendant's treatment and care of patients other than Mr. Murphy including, but not limited to, testimony that he has never had a patient, other than Mr. Murphy, that suffered a brain-stem hemorrhage during a dental procedure, and any claims and complaints from other patients regarding defendant's care and treatment.

### 2. Evidence of or References to the Defendant's Good Character

Plaintiff asks the court to prohibit defendant from offering evidence and referencing his good character. (Doc. 59 ¶ 12.) Specifically, she asks the court to prohibit defendant from offering evidence or testimony that (1) "Defendant is a caring, dedicated, etc., health care professional," (*id*. ¶ 14(d)), (2) "Defendant has dedicated his life to trying to take care of patients safely," (*id*. (e)), and (3) "all of the good that the Defendant does in treating patients," (*id*. (f)). Defendant contends that he "does not intend to offer evidence of his good character for the purpose of establishing that he acted in conformity therewith;" rather he intends to elicit "entirely proper" testimony "pertaining to Dr. Precise's personal background, his general and professional education, training, experience, and his general involvement in the community." (Doc. 68 at 5-6.) Also, he contends that he should be allowed to offer "any personal depiction" of himself because plaintiff "will no doubt devote energies to personal depictions of Mr. Murphy."[11] (*Id*. at 6.)

---

[11]Defendant has not moved in limine to prohibit "personal depiction" testimony regarding Mr. Murphy. Nevertheless, the court notes that evidence of Mr. Murphy's good

Rule 404(a) states, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). "An analysis of the admissibility of character evidence necessarily begins, then, with an examination of the purposes for which the evidence is proffered. If the evidence is introduced for the purpose of showing that a person acted in accordance with his character on a given occasion, then the evidence is inadmissible unless it falls within one of the exceptions noted in Rule 404." *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 794 (5th Cir. 1979)(footnote omitted). "Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *Id*. at 793 n.6 (quoting California Law Revision Commission, Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence, quoted in Notes of Advisory Committee on Proposed Rules, Fed. R. Evid. 404, 28 U.S.C.A. at p. 109); *see also United States v. Reed*, 700 F.2d 638, 645 (11th Cir. 1983)("Rules 404 and 405 (and their common law predecessors) are designed to insure that the ultimate decision of the factfinder is based on the merits of the case and not on the personalities involved. This is especially important in a criminal case where the state must be compelled to convict a defendant on the basis of a

character is also inadmissible for the same reasons.

particular act and not because the defendant is generally a 'bad' or 'evil' person. Rule 404(a), therefore, generally excludes the introduction of character evidence, subject only to limited exceptions.")(footnote omitted).

Defendant has not stated the purpose for which he seeks to admit evidence of his treatment of other patients and/or his good works in his community. The court finds the obvious reason for this evidence is to prove the improper purpose of propensity – he is a good and careful dentist; therefore, he did not breach the standard of care and cause Mr. Murphy's death. The court finds that the evidence defendant seeks to admit is inadmissible character evidence.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶¶ 12 and 14(d)-(f)), will be **GRANTED**. Defendant is prohibited from offering evidence of good character for the purpose of proving propensity and/or prejudicing the jury.

Defendant asks the court to prohibit "[a]ny reference to the fact that [defendant] did not contact the family [of Mr. Murphy] following the care at issue in this case." (Doc. 60 ¶ 15.) Plaintiff contends that such evidence is relevant to rebut defendant's evidence and argument regarding his good character testimony. As the court has excluded such evidence, defendant's Motion in Limine, (doc. 60 ¶ 15), is **GRANTED**. The parties are prohibited from making any reference to the fact that defendant did not contact the family following Mr. Murphy's procedure and subsequent death.

### 3. Admission to Dental School

Defendant asks the court to prohibit "[a]ny questioning or reference concerning [defendant] being denied admission to dental school on his first attempt." (Doc. 60 ¶ 14.) Plaintiff does not oppose this Motion.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 14), is **GRANTED**. The parties shall not question any witness nor otherwise reference the fact that defendant was denied admission to dental school on his first attempt.

## C. CRIMINAL AND CIVIL STANDARDS

### 1. Burden of Proof

Defendant asks the court to prohibit plaintiff from presenting "[a]ny reference to the burden of proof which exists in a criminal case, on the grounds that any such reference would be confusing to the jury and prejudicial to Dr. Precise." (Doc. 60 ¶ 4.) In response, plaintiff contends

> In Defendant's Response to Plaintiffs Motion for Limine (Doc. 68), Defendant argues in paragraph 6 that he intends to plead "not-guilty" to the charges against him, as such, Plaintiff should be permitted to explain to the jury in voir dire and argument that this is not a criminal case and that the burden of proof in this case is substantially less and different from the burden of proof in a criminal case. Such statements are intended to clarify, not confuse, the burden of proof.

(Doc. 72 at 8.)

In her Motion in Limine, plaintiff asks the court to prohibit defendant from testifying or offering evidence "[t]hat the Defendant 'pleads not guilty'; that 'medical malpractice[']' is the most 'serious charge' that can be brought against a dentist and/or that the Plaintiff has

accused the Defendant of 'practicing bad medicine.'" (Doc. 59 ¶ 6.) In response, defendant argues:

> At trial, Dr. Precise intends to establish that he is in fact not guilty of dental malpractice, and it is entirely appropriate and truthful for defense counsel to assert that dental malpractice is a serious charge. Plaintiff also moves the Court to preclude the defense from pointing out that she is accusing Dr. Precise of practicing bad medicine/dentistry. This, however, is exactly what Plaintiff has done throughout this case, and it is appropriate for the defense to apprise the jury of this fact.

(Doc. 68 at 4-5.)

Under the AMLA, "the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case." Ala. Code § 6-5-548(a). Also, "In the case of a jury trial, the jury shall be instructed that in order to return a verdict against a health care provider, the jury shall be reasonably satisfied by substantial evidence that the health care provider failed to comply with the standard of care and that such failure probably caused the injury or death in question." Ala. Code § 6-5-549. Needless to say, the standard of proof required in a criminal case – proof beyond a reasonable doubt – requires a much higher quantum of proof.

Defendant's Motion in Limine, (doc. 60 ¶ 4), is **GRANTED**. Obviously, both parties are precluded from presenting evidence or arguing that the burden of proof in this case is other than that set forth in Ala. Code § 6-5-549. Plaintiff's Motion in Limine, (doc. 59 ¶ 6),

is **DENIED**.  Defendant may refer to the Complaint as a "charge," may argue that he pleads "not guilty" or is "not guilty," and may refer to the claim as an "accusation."  He may also argue and testify that malpractice is a serious claim, that the claim is denied, and that the plaintiff alleges that he practiced bad medicine or dentistry, which he denies.

### 2. Mischaracterizing Defendant's Duty.

Plaintiff asks the court to prohibit "Defendant or Defendant's counsel from introducing evidence of or making references that the Plaintiff's burden is anything other than proving that the Defendant failed to comply with the standard of care," (doc. 59 ¶ 14), including the following statements:  "Defendant did the best he could do," (*id*. (a)); "Defendant had [Mr. Murphy's] well being in mind at all times, (*id*. (b)); "Defendant did not intend to do anything to injure or damage the Plaintiff," (*id*. (c)); "there has been only one true healer," (*id*. (g)); and "Defendant used his best judgment, (*id*. (h)).  Defendant responds that, although "[i]t would be inappropriate for any party to mischaracterize Dr. Precise's duty," the listed phrases do not mischaracterize defendant's duty. (Doc. 68 at 6.)

The court disagrees.  Defendant's duty toward Mr. Murphy was "to comply with the standard of care."  Ala. Code § 6-5-549.  This is an objective standard and defendant's subjective intent is not an issue.  For example, should the proof establish without contradiction that some action of defendant's breached the standard of care and that this breach caused Mr. Murphy's death, the jury could not return a verdict for defendant simply because they believed he had done "the best he could and used his best judgment," he had

32

Mr. Murphy's well being in mind at all time, and he did not intend to cause Mr. Murphy's death. Defendant's subjective intent and subjective effort on Mr. Murphy's behalf is irrelevant to the issue of whether he complied with the standard of care applicable to similarly situated dentists. Under the facts of this case, neither party has suggested that the defendant breached a standard of care requiring dentists not to intentionally injure their patients. Therefore, the court finds that the phrases at issue in plaintiff's Motion in Limine, (doc. 59 ¶ 14(a)-(c) and (g)-(h)), mischaracterize defendant's duty and suggest an improper basis for the jury's verdict.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 14(a)-(c) and (g)-(h)), is **GRANTED**.

## D. FINANCIAL CONDITION OR EFFECT OF VERDICT

### 1. Effect of the Verdict on Defendant.

Plaintiff asks the court to prohibit "Defendant, his attorneys or witnesses from making any comment about how a verdict for the Plaintiff in this case might impact or adversely affect the Defendant," including "a. [the] financial impact (given the availability of liability insurance); or b. professional licensure (there is no evidence or suggestion that anyone's license is in jeopardy)." (Doc. 59 ¶ 15.) Defendant opposes the Motion to the extent it seeks to prohibit him from arguing that the Alabama Board of Dental Examiners [the Board] has the authority to discipline him if the jury returns a verdict for plaintiff.[12] (Doc. 68 at 6-7.)

_____

[12]According to defendant, "Alabama Code § 34-9-18 vests the Alabama Board of Dental Examiners with the authority to invoke disciplinary action – including suspension or

33

Defendant "agrees with Plaintiff that it would be improper for any party to make any comment regarding the financial impact of a plaintiff's verdict on [defendant]." (*Id*. at 7.)

The court finds that the unfair prejudice of admitting evidence that the Board "might" discipline defendant outweighs any slight probative value of such evidence. *See* Fed. R. Evid. 403.[13] Certainly evidence of the Board's authority to sanction negligent dentists and that the Board could sanction defendant in the event of a plaintiff's verdict in no way supports an inference that defendant in this case breached the standard of care in his treatment of Mr. Murphy. Indeed, the court does not perceive any material fact that is made more or less probable because of the Board's authority. Rather, such evidence would only serve to invite the jury to base its judgment on facts unrelated to defendant's actions at issue – such as whether or not defendant would be subject to sanctions by the Board.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 15), is **GRANTED**. Defendant is prohibited from offering any evidence or argument regarding the potential effect of a plaintiff's verdict on defendant, his finances, and/or his dental license.

### 3. Financial Status of Either Party

---

termination of the license to practice dentistry – upon a finding that a dentist is 'guilty of negligence or gross negligence.'" (Doc. 68 at 6.)

[13]"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendant asks the court to prohibit "[a]ny reference to the financial status of the Plaintiff or Defendant, including any reference to any purported wealth of Defendant or any defense witness, including direct references to any amounts of money made, earned, billed, or any indicia of wealth." (Doc. 60 ¶ 11.) He also asks the court to prohibit Dr. Garcia or other witnesses from testifying about "any financial problems or 'insurance issues' that [Mr. Murphy] may have had." (*Id*. ¶ 32.) In response, plaintiff contends that she does not intend to offer testimony regarding Mr. Murphy's financial problems and/or insurance issues. (Doc. 72 at 16-17.) Also, she "does not intend to make any reference to the 'purported wealth of the defendant,'" except to show "the fact that the husband of the Dixieland Dental employee who altered Mr. Murphy's chart post-stroke (Sandra Jane Davis) is the longtime manager of Dr. Precise's father's cattle operation," which is "obviously relevant to show interest, bias or prejudice" of Ms. Davis, a witness in this case. (*Id*. at 13.) Based on the record, the court assumes that plaintiff and defendant both intend to offer evidence and/ question the retained experts regarding their compensation for work in this case.

Defendant's Motion in Limine, (doc. 60 ¶ 11), is **GRANTED IN PART** and **DENIED IN PART**; his Motion in Limine, (doc. 60 ¶ 32), is **GRANTED**. The parties are prohibited from referencing the financial status of plaintiff, Mr. Murphy, defendant, or witnesses except the parties may question Ms. Davis regarding her husband's employment as the manager of Precise Farms and may question retained expert witnesses regarding compensation for their work in this case.

### 4. Cattle Farmers

Defendant asks the court to prohibit "[a]ny reference to Precise Farms or to Robert and Michael Precise being cattle farmers." (Doc. 60 ¶ 13.)

For the reasons set forth above, defendant's Motion in Limine, (doc. 60 ¶ 13), is **GRANTED IN PART**. The parties are prohibited from offering evidence that defendant and his father own a cattle farm, except to the extent Ms. Davis may be questioned regarding her husband's employment.

### 5. Malpractice Insurance

Plaintiff asks the court to prohibit any testimony or evidence regarding medical malpractice liability insurance. (Doc. 59 ¶ 10.) Defendant agrees. Defendant asks the court to prohibit the parties from making –

> Any statement or reference to suggest that Dr. Precise has liability insurance coverage, that any witness or physicians generally have such insurance coverage, that any expert witness identified by Dr. Precise is (or has been) insured by the same professional liability carrier as Dr. Precise, any reference to insurance premiums, any reference to seminars put on by any professional liability insurance company, or any reference to Pro Assurance or professional liability insurance generally.

(Doc. 60 ¶ 3.) Plaintiff does not oppose this Motion.

Plaintiff's Motion in Limine, (doc. 59 ¶ 10), and defendant's Motion in Limine, (doc. 60 ¶ 3), are **GRANTED**. The parties are prohibited from making any reference to malpractice insurance.

### 6. Billing Practices and Financial Operation of Dixieland Dental

Defendant asks the court to prohibit –

Any reference to the billing practices or financial operations of Dixieland Dental, including but not limited to evidence that Dixieland Dental does not process insurance claims, the means by which Dixieland Dental accepts payments for its services, how Dixieland Dental sets prices for its services, any mention of Dr. Precise's salary or how Dr. Precise's salary is calculated.

(Doc. 60 ¶ 10.) He also asks that the court prohibit "[a]ny reference to litigation over payment of fees for services between Dixieland Dental and other patients." (*Id*. ¶ 12.) Plaintiff does not oppose these Motions.

Therefore, defendant's Motion in Limine, (doc. 60 ¶¶10, 12), is **GRANTED**. The parties are prohibited from making "[a]ny reference to the billing practices or financial operations of Dixieland Dental, including but not limited to evidence that Dixieland Dental does not process insurance claims, the means by which Dixieland Dental accepts payments for its services, how Dixieland Dental sets prices for its services, any mention of [defendant's] salary or how [defendant's] salary is calculated," (*id*. ¶ 10), as well as any litigation of fees for services provided patients other than Mr. Murphy, (*id*. ¶ 12).

## E. SUBSEQUENT REMEDIAL MEASURES

### 1. Lowered Blood Pressure Threshold

Defendant asks the court to prohibit "[a]ny testimony or other evidence of subsequent remedial measures, including but not limited to evidence that Dr. Precise has lowered the blood pressure threshold for conducting dental extractions and maintains lists of medications in patient records after the events at issue in this case." (Doc. 60 ¶ 8.)

Rule 407 is clear –

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
>> • negligence;
>> • culpable conduct;
>> • a defect in a product or its design; or
>> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 8), is **GRANTED**. However, should such evidence become relevant during the course of the trial, such as if defendant denies the feasibility of lowering the blood-pressure threshold, plaintiff may seek to admit such evidence outside the presence of the jury.

### 2. Dixieland Dental's Failure to Develop Written Policies

Defendant seeks to exclude evidence "that Dr. Precise was negligent or breached the applicable standard of care by not developing 'written policies.'" (Doc. 60 ¶ 16.) Plaintiff in response contends that she does not intend to argue or present evidence that defendant breached the standard of care by not developing written policies; rather, she intends to prove that Dixieland Dental had a written notice regarding approval of a physician before treatment of certain patients. (Doc. 72 at 4, 14, 16.) Defendant's Motion in Limine does not seek to exclude evidence of this document and such evidence is admissible, subject to a proper

foundation being established. From the parties' submissions, the court finds that plaintiff does not intend to offer evidence that Dixieland Dental did not develop written policies; therefore, defendant's Motion in Limine, (doc. 60 ¶ 16), is **GRANTED** without opposition.

## F. MR. MURPHY'S MEDICAL RECORD

### 1. Altering the Medical Record

Defendant seeks to preclude plaintiff from offering any statement referring to defendant or anyone at Dixieland Dental "improperly altering" Mr. Murphy's medical records. (Doc. 60 ¶ 17 ["Any reference to someone 'doctoring the record,' 'fessing up' to making entries in the chart, 'manipulating' the record, 'interfering' with recordkeeping, or otherwise improperly altering the decedent's medical records."].) He argues, "Any such statements would serve no purpose but to evoke passion and prejudice." (*Id*.) Plaintiff, however, contends that such statements and evidence –

> are relevant in *this* case because Dixieland Dental employees did, with the defendant's knowledge, alter Mr. Murphy's chart on March 5, 2014, following his stroke. In addition, defendant claims the pre-operative blood pressure must have been inadvertently deleted from the chart during the process. Finally, the first time a pre-operative blood pressure appears in the chart is when Dr. Precise adds an addendum to the records 13 days later when plaintiff requested a copy of Mr. Murphy's records.

(Doc. 72 at 14 [emphasis in original].)

The court finds evidence that defendant and/or someone else at Dixieland Dental altered Mr. Murphy's records after the incident at issue in this case is relevant to credibility as it tends to show deceit or a cover-up after the fact and that may be relevant to showing

consciousness of wrongdoing.  Therefore, defendant's Motion in Limine, (doc. 60 ¶ 17), is

**DENIED**.[14]

### 2. "Incredibly Amazing"

Defendant seeks to prohibit plaintiff's witnesses from testifying that is was "incredibly amazing" that Mr. Murphy's blood pressure readings were not saved in his chart. (Doc. 60 ¶ 18.)  He contends that "[a]ny such statement would serve no purpose but to evoke passion and prejudice."  (*Id*.)  Plaintiff responds that "[s]uch references and arguments are relevant in *this* case."  (Doc. 72 at 14 [emphasis in original].)

The court assumes that defendant objects to the specific use of the phrase "incredibly amazing," and not to all opinion evidence that defendant's failure to record and save blood pressure readings in Mr. Murphy's chart was unusual or a breach of the standard of care. Nevertheless defendant's Motion in Limine, (doc. 60 ¶ 18), is **DENIED**.  Testimony that the failure to chart blood pressures is "incredibly amazing" is subject to cross-examination of any witness so testifying regarding the basis for his or her opinion.  The phrase "incredibly amazing" shall not be used in opening argument, but may be used in closing arguments if supported by testimony.

## G.  HEARSAY

Defendant asks the court to prohibit testimony regarding certain hearsay statements: "Any reference to Dr. Rodney Baier discussing this case with his oral surgeon or anything

---

[14]Defendant, of course, may offer evidence as to the circumstances of the alteration of Mr. Murphy's medical record.

the oral surgeon may have stated," (doc. 60 ¶ 29); "Any statements made to Dr. Garcia by the decedent's family after the care at issue in this case," (*id*. ¶ 31); "Any hearsay statements made to Cindy Murphy or Mr. Murphy's daughters by Dr. Garcia, Dr. Voss or any other physicians or persons, including anyone at Dixieland Dental other than [defendant]," (*id*. ¶ 33); and "Any hearsay statements made by Cindy Murphy regarding what she assumed employees of Dixieland Dental told Mr. Murphy, including but not limited to any statement that she assumed an employee of Dixieland Dental told Mr. Murphy to stop taking Plavix at the time that Mr. Murphy called to make the appointment," (*id*. ¶ 34). Plaintiff does not oppose defendant's Motion in Limine, except as to the "hearsay statements made to Cindy Murphy or Mr. Murphy's daughters by Dr. Garcia, Dr. Voss or any other physicians or persons, including anyone at Dixieland Dental other than [defendant]," that she may use as impeachment.

Defendant's Motion in Limine, (doc. 60 ¶¶ 29, 31, 33, and 34), is **GRANTED**. During the course of trial, should plaintiff wish to impeach a witness using statements made to her or Mr. Murphy's daughters, she should first seek the court's permission outside the presence of the jury.

## H. LITIGATION

### 1. Settlement Discussions

Plaintiff asks the court to prohibit all references to "settlement negotiations or the lack of any settlement offer(s)." (Doc. 59 ¶ 5.) Defendant does not oppose the Motion.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 5), is **GRANTED**. The parties are prohibited from making any reference to settlement negotiations or the lack of a settlement offer.

### 2. "Malpractice Lawyers"

Plaintiff asks the court to prohibit defendant from arguing that "Plaintiff's lawyers are 'malpractice lawyers' who travel across this state suing health care providers." (Doc. 59 ¶8.) Defendant does not oppose this Motion.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 8), is **GRANTED**. The parties are prohibited from arguing that "plaintiff's lawyers are 'malpractice lawyers' who travel across this state suing health care providers."

### 3. "Jackpot"

Plaintiff asks the court to prohibit defendant from arguing or suggesting "to the jury that by bringing this lawsuit Plaintiff hopes to hit the 'Jackpot' or 'Lottery'." (Doc. 59 ¶ 13.) Defendant does not oppose this Motion.

Therefore, plaintiff's Motion in Limine, (doc. 59 ¶ 13), is **GRANTED**. The parties are prohibited from arguing or suggesting to the jury that, by filing this lawsuit, plaintiff hopes to hit the jackpot or win the lottery.

# I. OBJECTIONS TO EXHIBITS

Defendant asks the court to prohibit "[a]ny reference to any of the Exhibits or Documents to which the Defendant has objected in Defendant's Objections to Plaintiff's Exhibits." (Doc. 60 ¶ 35 [citing doc. 49].)

The mere filing of an objection to an exhibit is not a ground for excluding that exhibit. To the extent the court rules on the admissibility of an exhibit before or during trial, the parties shall abide by that ruling. However, defendant's overly broad Motion seeking to exclude all references to all exhibits to which he has objected before the court has ruled on those objections, (doc. 60 ¶ 35), is **DENIED**.

## J. DYING IN THE DENTAL CHAIR

Defendant asks the court to prohibit "[a]ny reference to decedent 'dying in the dental chair.'" (Doc. 60 ¶ 19.) Plaintiff does not oppose this Motion.

Therefore, defendant's Motion in Limine, (doc. 60 ¶ 19), is **GRANTED**. The parties are prohibited from referencing Mr. Murphy "dying in the dental chair." (*Id.*)

<u>**CONCLUSION**</u>

For the foregoing reasons, the court **ORDERS** the parties' Motions in Limine, (docs. 59 and 60), are **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion in Limine, (doc. 59), paragraphs 2-5 and 7-14, are **GRANTED** and paragraph 6 is **DENIED**. Defendant's Motion in Limine, (doc. 60), paragraphs 1, 3-8, 10, 12, 14-16, 19, 21-23, 26-29, and 31-34 are **GRANTED**, paragraphs 3, 5, 17-18, and 20, are **DENIED**, and paragraphs 2, 9-11, 13, 24-25, and 30 are **GRANTED IN PART** and **DENIED IN PART**.

**DONE** this 1st day of December, 2017.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE